**UNITED STATES PATENT AND TRADEMARK OFFICE**
Trademark Trial and Appeal Board
2900 Crystal Drive
Arlington, Virginia 22202-3513

**Mailed:** June 26, 2009

In re Peter S. Herrick, P.A.

Serial No. 76653159

Filed: January 9, 2006

Peter S. Herrick, Esq.
Peter S. Herrick, P.A.
3520 Crystal View Court
Miami, Florida 33133

The attached decision, which originally issued on June 10, 2009 as "NOT CITABLE AS A PRECEDENT OF THE TTAB," has been redesignated as "A PRECEDENT OF THE TTAB."

*By the Trademark Trial*
*and Appeal Board*

THIS OPINION IS A
PRECEDENT OF THE TTAB

Originally Mailed:  June 10, 2009

Redesignated as precedential:  June 26, 2009

**UNITED STATES PATENT AND TRADEMARK OFFICE**

_____

**Trademark Trial and Appeal Board**

_____

In re Peter S. Herrick, P.A.

_____

Serial No. 76653159

_____

Peter S. Herrick, Esq. for Peter S. Herrick, P.A.

Ty Murray, Trademark Examining Attorney, Law Office 113
(Odette Bonnet, Managing Attorney).

_____

Before Quinn, Bergsman and Wellington, Administrative
Trademark Judges.

Opinion by Bergsman, Administrative Trademark Judge:

    Peter S. Herrick, P.A. ("applicant") seeks to register

the mark U.S. CUSTOMS SERVICE and design, shown below in

black and white, for "attorney services," in Class 42.



Serial No. 76653159

During the prosecution of its application, applicant claimed the colors blue, yellow and white as features of its mark and it disclaimed the exclusive right to use "U.S. Customs Service 1789."[1]

The Trademark Examining Attorney refused registration under Section 2(a) of the Trademark Act of 1946, 15 U.S.C. §1052(a), on the ground that the mark falsely suggests a connection with United States Customs and Border Protection, formerly known as the United States Customs Service, an agency of the United States government. The Examining Attorney also refused registration under Section 2(b) of the Trademark Act of 1946, 15 U.S.C. §1052(b), on the ground that applicant's mark consists of or comprises a simulation of an insignia of the United States (*i.e.,* the governmental insignia of the United States Customs Service and/or the United States Treasury). Finally, the Examining Attorney has refused registration because applicant has

---

[1] Where, as here, registration is barred under Sections 2(a) and 2(b) of the Trademark Act, a disclaimer of an unregistrable component will not render the mark registrable. *See, e.g., American Speech-Language-Hearing Association v. National Hearing Aid Society,* 224 USPQ 798, 808 (TTAB 1984) ("While the disclaimer is appropriate to indicate that respondent claims no proprietary right in the disclaimed words, the disclaimer does not affect the question of whether the disclaimed matter deceives the public, since one cannot avoid the Section 2(a) deceptiveness prohibition by disclaiming deceptive matter apart from the mark as a whole").

failed to provide a drawing conforming to the requirements of Trademark Rules 2.52-2.54, 37 CFR§§2.52-2.54.

A.  <u>Whether applicant's mark falsely suggests a connection with United States Customs and Border Protection</u>?

Section 2(a) of the Trademark Act of 1946, 15 U.S.C. §1052(a), provides, in relevant part, that "[n]o trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it – (a) consists of or comprises . . . matter which may . . . falsely suggest a connection with persons living or dead."

As a preliminary matter, we note that Section 2(a) of the Trademark Act refers to a false suggestion of a connection with a person or institution.  Institutions, as used in Section 2(a), include government agencies.  Section 45 of the Trademark Act, 15 U.S.C. §1127, defines a "person" as including "the United States, any agency or instrumentality thereof."  *See In re National Intelligence Academy,* 190 USPQ 570 (TTAB 1976) (NATIONAL INTELLIGENCE ACADEMY for educational services in the field of intelligence gathering for law enforcement officers falsely suggests a connection with the United States government). *See also NASA v. Record Chemical Co. Inc.,* 185 USPQ 563, 566-567 (TTAB 1975) (NASA is a juristic person and has

standing to oppose the registration of marks which may damage the agency); *Federal Bureau of Investigation v. M. Bril & Co.,* 172 USPQ 310, 313 (TTAB 1971) (the F.B.I. is a juristic person and it has the capacity to oppose the registration of a mark pursuant to Sections 2(a) and 2(d) as appropriate).

Following our principal reviewing court's decision in *University of Notre Dame du Lac v. J.C. Gourmet Food Imports Co., Inc.,* 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983), *aff'g* 213 USPQ 594 (TTAB 1982), the Board utilizes the following four-part test to determine whether a false suggestion of a connection has been established:

1.  The mark is the same as, or a close approximation of, the name of or identity previously used by another person;

2.  The mark would be recognized as such because it points uniquely and unmistakably to that person;

3.  The person named by the mark is not connected with the activities performed by the applicant under the mark; and,

4.  The prior user's name or identity is of sufficient fame or reputation that a connection with such person would be presumed when applicant's mark is used on applicant's goods.

Serial No. 76653159

*In re MC MC S.r.l.,* 88 USPQ2d 1378, 1379 (TTAB 2008); *In re White,* 80 USPQ2d 1654, 1658 (TTAB 2006); *In re Wielinski,* 49 USPQ2d 1754, 1757 (TTAB 1998); *In re Sloppy Joe's Int'l Inc.,* 43 USPQ2d 1350, 1353 (TTAB 1997).

    1.    <u>Whether applicant's mark is a close approximation of the name or identity of United States Customs and Border Protection</u>?

As indicated above, applicant is seeking to register the mark U.S. CUSTOMS SERVICE and design, but the Examining Attorney asserts that the mark at issue is a close approximation of the identity of the United States Customs and Border Protection, formerly known as the United States Customs Service. Applicant argues that the mark sought to be registered does not falsely suggest a connection with the U.S. Customs Service because the U.S. Customs Service is no longer in existence.

Effective March 1, 2003, the United States Customs Service was merged into the Department of Homeland Security and began operation as United States Customs and Border Protection.[2] Nevertheless, United States Customs and Border

---

[2] U.S. Customs and Border Protection website (cbp.gov) attached to the August 2, 2006 and March 27, 2007 Office Actions; an article entitled "Customs Service, United States" in the United States Customs forum (www.espionageinfo.com) attached to the March 19, 2008 Office Action.

Protection still refers to itself as the U.S. Customs
Service[3] as do members of the public.[4]

Prior to becoming United States Customs and Border
Protection, the United States Customs Service used a seal
that is virtually identical to applicant's mark.

United States Customs
Service Seal

Applicant's Mark




With the exception of applicant's color claim, the only
difference between applicant's mark and the seal is that
applicant uses "U.S. Customs Service" and the seal uses
"United States Customs Service."  The fact that applicant's
mark includes design elements does not avoid the commercial
impression that the mark is the same or a close

---

[3] *Id.*  The title of the "History" webpage is "U.S. Customs
Service – Over 200 Years of History."  In addition, the webpage
includes the following use of U.S. Customs Service:  "Did you
know the U.S. Customs Service was the parent or forerunner of
many other agencies?" and "The United States Customs Service
ensures that all imports and exports comply with U.S. laws and
regulations."
[4] In the March 19, 2008 Office Action, the Examining Attorney
submitted excerpts from news articles published after March 2003
referring to United States Customs and Border Protection as U.S.
Customs Service.

approximation to the former name and/or current identity of the United States Customs and Border Protection. "One cannot overcome a refusal based on a false suggestion of a connection merely by adding a design element to an entity or institution's identity." *In re North American Free Trade Association,* 43 USPQ2d 1282, 1285 (TTAB 1997). Moreover, applicant's use of a seal that is nearly identical to the former seal of the United States Customs Service reinforces that its mark will be identified with the government agency.

In view of the foregoing, we find that applicant's mark is a close approximation of the former name and/or current identity of the United States Customs and Border Protection.

2. Whether applicant's mark points uniquely and unmistakably to United States Customs and Border Protection?

As to whether the U.S. CUSTOMS SERVICE and design mark points uniquely and unmistakably to the U.S. Customs and Border Protection, applicant contends that since the U.S. Customs Service is no longer in existence, applicant' mark does not point uniquely and unmistakably to a non-existent agency. On the other hand, applicant's website features references to "Customs issued memorandum," shown below, and

applicant "concentrates its legal practice in U.S. Customs law."[5]



In addition, as referenced above, the Examining Attorney has submitted evidence showing that some of the public still use the term U.S. Customs Service to refer to United States Customs and Border Protection. Applicant's use of the former U.S. Customs Service seal in connection with its offer of legal services "concentrating" on U.S. customs law is strong evidence that applicant is attempting to draw a connection between its services and the agency that oversees customs issues, especially because a segment of the public still uses U.S. Customs Service to refer to United States Customs and Border Protection. Finally, the name "U.S. Customs Service" has meaning only as a governmental agency. The only entity the name "U.S. Customs Service" could possibly identify is the government agency and, therefore, it is associated only with United

---

[5] Applicant's February 2, 2007 Response.

States Customs and Border Protection. Accordingly, we find that applicant's mark points uniquely and unmistakably to United States Customs and Border Protection.

3. Whether United States Customs and Border Protection is connected with applicant's legal services?

United States Customs and Border Protection has no connection with applicant's business and applicant does not claim that it is part of the agency.[6]

4. Whether United States Customs Service's name or reputation is sufficiently famous that a connection with United States Customs and Border Protection would be presumed when applicant's mark is used in connection with applicant's services?

Applicant's services are "attorney services," and that identification of services is broad enough to encompass customs work. As indicated above, applicant's practice offers legal services "concentrating its legal practice in U.S. Customs law." Applicant's legal services are closely related to the activities performed by the U. S. Customs and Border Protection including, *inter alia:*

> …[E]nsuring that all imports and exports comply with U.S. laws and regulations; collecting and protecting revenue; and guarding against smuggling. Its specific duties include assessing and collecting duties, excise taxes, and penalties on imported goods; interdicting and seizing illegal items;

---

[6] Applicant's February 2, 2007 Response.

> processing persons, baggage, cargo, and
> mail; administering certain navigation
> laws; detecting and apprehending
> persons engaged in activities designed
> to circumvent Customs regulations;
> protecting American industry, as well
> as intellectual property rights by
> enforcing laws to prevent illegal trade
> practices; enforcing import and export
> restrictions on dangerous items; and
> collection of import and export data
> for the compilation of international
> trade statistics.  In addition to
> enforcing its own laws, Customs
> enforces some 400 other laws on behalf
> of more than 40 government agencies.[7]

Given the ubiquitous presence of United States Customs
and Border Protection to people involved in international
commerce and travel, as well as the closely related
services rendered by applicant and the duties performed by
United States Customs and Border Protection, we find that a
connection between applicant's services and the activities
of the government agency would be presumed when applicant
uses the mark U.S. Customs Service and design in connection
with its legal services.

Moreover, based on applicant's use of a virtually
identical seal of the former United States Customs Service
in connection with applicant's legal services
"concentrating its legal practice in U.S. Customs

---

[7] An article entitled "Customs Service, United States" in the
United States Customs forum (www.espionageinfo.com) attached to
the March 19, 2008 Office Action.

law," we may draw an inference that applicant intends to create a connection with United States Customs and Border Protection. *In re North American Free Trade Association,* 43 USPQ2d at 1287, *quoting The University of Notre Dame v. J.C. Food Imports,* 703 F.2d 1372, 217 USPQ 505,509 (Fed. Cir. 1983) ("Evidence of such intent [applicant intended to create a false suggestion of a connection] would be highly persuasive that the public will make the intended false connection"). *Cf. L.C. Licensing, Inc. v. Berman,* 86 USPQ2d 1883, 1890-1891 (TTAB 2008) (applicant adopted its mark with the intent to trade off opposer's mark and such bad faith is evidence that confusion is likely because an inference is drawn from applicant's expectation of confusion).

In view of the facts that applicant's mark is a close approximation of the name of the former United States Custom Service and of the agency's current identity, that applicant's mark points uniquely and unmistakably to United States Customs and Border Protection, that applicant's law practice has no connection with the agency, and that a connection with the agency would be presumed if applicant's mark were used in connection with legal services, we find that applicant's mark falsely suggests a connection with

11

Serial No. 76653159

United States Customs and Border Protection thereby precluding registration under Section 2(a).

B.   Whether applicant's mark consists of or comprises an insignia of the United Sates or a simulation thereof?

Section 2(b) of the Trademark Act of 1946, 15 U.S.C. §1052(b), provides, in relevant part, that "[n]o trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it – (b) Consists of or comprises the flag or coat of arms or other insignia of the United States . . . or any simulation thereof."

> [T]he wording "or other insignia of the United States" must be restricted in its application to insignia of the same general class as "the flag or coat of arms" of the United States.  Since both the flag and coat of arms are emblems of national authority it seems evident that other insignia of national authority such as the Great Seal of the United States, the Presidential Seal, and seals of government departments would be equally prohibited registration under Section 2(b).  On the other hand, it appears equally evident that department insignia which are merely used to identify a service or facility of the Government are not insignia of national authority and that they do not fall within the general prohibitions of this section of the Statute.

12

*In re U.S. Department of the Interior,* 142 USPQ 506, 507 (TTAB 1964).  *See also Heroes Inc. v. Boomer Esiason Hero's Foundation,* 43 USPQ2d 1193, 1198 (TTAB 1997).  In other words, the issue is whether the symbol at issue "identify people and things associated with a particular agency within a department of the executive branch of the government, rather than function as an insignia of national significance representing the authority of the government or nation as a whole."  *U.S Navy v. U.S. Manufacturing Co.,* 2 USPQ 1254, 1256 (TTAB 1987).

The Examining Attorney refused to register applicant's mark under Section 2(b) of the Trademark Act of 1946 on the ground that applicant's mark is a simulation of the Department of the Treasury seal.

Department of the Treasury[8]            Applicant's Mark



        

The word "simulation" in the context of Section 2(b) is used in its usual and generally understood meaning, namely, "an assumption or imitation of a particular

---

[8] Excerpt from the website of the Department of Treasury (*treasury.gov*) attached to the August 2, 2008 Office Action.

appearance or form."  The Random House Dictionary of the English Language (Unabridged) p. 1783 (2nd ed. 1987).  *See In re Advance Industrial Security, Inc.,* 194 USPQ 344, 346 (TTAB 1977) (a simulation for purposes of Section 2(b) refers "to something that gives the appearance or effect or has the characteristics of the original item").  The determination of whether applicant's mark is a simulation of an insignia of the United States is made "without a careful analysis and side-by-side comparison" with the government insignia because "purchasers normally retain but a general or overall rather than a specific recollection of the various elements or characteristics of design marks." *Id.*

Because the government insignia at issue is the seal of the Department of the Treasury thereby representing the authority of the government (*i.e.,* an emblem of governmental authority), registration of a mark that constitutes a simulation of that seal is prohibited under Section 2(b).  *In re U.S. Department of the Interior,* 142 USPQ at 507.  On the other hand, with respect to the seal of the United States Customs Service, because the United States Customs Service was formerly a division of the Department of Treasury, and not a government department itself, and the seal was used to identify a service or

14

facility of the Department of the Treasury, the seal of the former agency is not prohibited under Section 2(b). *In re U.S. Department of the Interior,* 142 USPQ at 507.

When applicant's mark is compared to the government seal at issue, we find that with the exception of the words (The Department of the Treasury vs. U.S. Customs Service), they are virtually identical, and that the average person upon seeing applicant's mark would associate it with the Department of Treasury seal. In other words, applicant's mark is not readily distinguishable from the Department of the Treasury seal. Therefore, applicant's mark consists of or comprises a simulation of an insignia of the United States thereby prohibiting registration.

C. <u>Whether applicant's mark complies with the requirements of Trademark Rules 2.52-2.55?</u>

Applicant ignored the requirement for a new drawing, and therefore the application should have been deemed abandoned. Trademark Rule 2.65(a) reads as follows, so far as pertinent:

> If an applicant fails to respond, or to respond completely, within six months after the date an action is issued, the application shall be deemed abandoned.

Originally, applicant submitted a black and white drawing of the mark sought to be registered. In the first Office Action, the Examining Attorney correctly noted that

15

the drawing was unacceptable "because the depiction of the mark is unclear; the drawing is a photocopy of the mark with a smudged white line appearing across the top of the image, which will not reproduce satisfactorily."[9]  Also, the Examining Attorney noted that while the drawing was black and white, the specimen of use displayed the mark in color. Accordingly, the Examining Attorney inquired whether applicant was claiming color as a feature of the mark.

In response to the first Office Action, applicant claimed the colors blue, yellow and white as features of the mark, but refused to file a new drawing explaining that "the current drawing should be acceptable for it is the same mark that appears on the substitute specimen."[10]

In the March 27, 2007 Office Action, the Examining Attorney repeated and made "final" the requirement for a substitute drawing.  In its August 1, 2007 Response, applicant did <u>not</u> respond to the requirement for a new drawing.  The Examining Attorney continued the final refusals, including the requirement for a new drawing, in her August 23, 2007 Office Action.

---

[9] August 2, 2006 Office Action.
[10] An excerpt from the substitute specimen is shown in the discussion in Section A(2) above.

Serial No. 76653159

The Trademark Office assigned the prosecution of this application to a new Examining Attorney who requested that the application be remanded. The new Examining Attorney withdrew the refusal that the mark sought to be registered was deceptive, issued a new refusal that the mark sought to be registered creates a false suggestion of a connection with United States Customs and Border Protection under Section 2(a), and maintained the refusal under Section 2(b).[11] The new Examining Attorney did not reference the final requirement for a new drawing.

In the November 5, 2008 Office Action, the Examining Attorney finally refused registration under Sections 2(a) and (b) of the Trademark Act. In addition, the Examining Attorney reasserted the final requirement for a substitute drawing. While applicant did not reference the drawing requirement in its appeal brief, the Examining Attorney did. Applicant did not file a reply brief.

Because the applicant did not respond to the requirement for a new drawing after its response to the first Office Action, the application should have been deemed abandoned. Trademark Rule 2.65(a). However, for purposes of completeness and because the Examining Attorney

---

[11] March 19, 2008 Office Action.

17

treated the application as if applicant had challenged the requirement for a new drawing, we will review the drawing requirement.

Trademark Rule 2.54 reads as follow, so far as pertinent:

> (d) Depict the mark in black ink, or in color if color is claimed as a feature of the mark.
>
> (e) Drawings must be typed or made with a pen or by a process that will provide high definition when copied … All lines must be clean, sharp and solid, and must not be fine or crowded.

*See also* Trademark Rule 2.53(c). Accordingly, applicant's drawing is unacceptable because, as the Examining Attorney correctly noted, "the depiction of the mark is unclear; the drawing is a photocopy of the mark with a smudged white line appearing across the top of the image, which will not reproduce satisfactorily."

We also note that while applicant claimed the colors blue, yellow and white as features of the mark, it filed a black and white drawing. Trademark Rule 2.52(b)(1) provides that "[i]f the mark includes color, the drawing must show the mark in color." *See also* Trademark Rule 2.54(d). Because applicant claimed color as a feature of the mark but did not provide a color drawing, the black and white drawing filed by applicant is unacceptable.

18

In view of the foregoing, the refusal to register because applicant failed to file a drawing of the mark conforming with Trademark Rules 2.52-2.55 is affirmed.

Decision:  The refusal to register is affirmed on all grounds.